**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **MARIO MENDOZA, JR.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 7:23-cv-00291** |
| | § | |
| **MVM, INC., KG&P STRATEGIES, INC.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants MVM, Inc. ("MVM") and KG&P Strategies, Inc. ("KG&P") (collectively "Defendants") hereby move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on both causes of action in Plaintiff Mario Mendoza, Jr.'s ("Plaintiff") Complaint.

# TABLE OF CONTENTS

**PAGE**

I.    SUMMARY .................................................................................................. 1

II.   UNDISPUTED MATERIAL FACTS ........................................................... 2

    A.    Overview of Plaintiff's Hire and Job Duties............................................ 2

    B.    Plaintiff Was Aware of MVM Policies, Including the Prohibition Against Sleeping on Duty............................................................................ 3

    C.    In June 2022, MVM Investigates Two Complaints About Plaintiff's Performance, Including Sleeping on Duty.......................................... 4

    D.    Plaintiff Never Complained to MVM of Discrimination or Retaliation Prior to Initiating this Litigation ...................................... 7

III.  ARGUMENTS & AUTHORITIES ............................................................... 8

    A.    Summary Judgment Standard ............................................................. 8

    B.    KG&P is Entitled to Summary Judgment Because Plaintiff Failed to Exhaust Administrative Remedies with Respect to Any Claims Against KG&P ............................................................................ 9

    C.    KG&P is Entitled to Summary Judgment Because It Did Not Employ Plaintiff ....................................................................................... 9

    D.    MVM Terminated Plaintiff's Employment Because He Engaged in Misconduct -- Not Because of his Sex............................................ 10

          1.    Plaintiff Cannot Make a Prima Facie Case of Sex Discrimination.......... 10

          2.    MVM's Legitimate Reason for Terminating Plaintiff's Employment Was Not Pretext ................................................. 13

    E.    MVM Terminated Plaintiff's Employment Because He Engaged in Misconduct – Not to Retaliate Against Him........................................ 19

IV.  CONCLUSION........................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alamo Heights Indep. Sch. Dist. v. Clark*,
  544 S.W.3d 755 (Tex. 2018) ................................................................19

*Alkhawaldeh v. Dow Chem. Co.*,
  851 F.3d 422 (5th Cir. 2017) ..........................................................12, 13

*Anderson v. Houston Cmty. Coll. Sys.*,
  458 S.W.3d 633 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ............9

*Braymiller v. Lowe's Home Ctrs. Inc.*,
  325 F. App'x 311 (5th Cir. 2009) ........................................................10

*Broadway v. City of Montgomery, Ala.*,
  530 F.2d 657 (5th Cir. 1976) ..............................................................13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..............................................................................8

*Clark v. Champion Nat'l Sec., Inc.*,
  952 F.3d 570 (5th Cir. 2020) ..............................................................14

*Cnty. of El Paso v. Aguilar*,
  600 S.W.3d 62 (Tex. App.—El Paso 2020, no pet.) ............................12

*Donaldson v. Texas Dep't of Aging & Disability Servs.*,
  495 S.W.3d 421 (Tex. App.—Houston [1st Dist.] 2016, pet. denied ........11, 12, 13

*Equal Emp. Opportunity Com'n v. Vantage Energy Servs., Inc.*,
  954 F.3d 749 (5th Cir. 2020) ................................................................9

*Evans v. Miley*,
  2023 WL 8295995 (E.D. Tex. Sept. 22, 2023) ....................................13

*Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*,
  745 F. App'x 209 (5th Cir. 2018) ........................................................18

*Gorman v. Verizon Wireless Tex., LLC*,
  753 F.3d 165 (5th Cir. 2014) ..............................................................19

*Goudeau v. Nat'l Oilwell Varco, L.P.*,
  793 F.3d 470 (5th Cir. 2015) ..............................................................15

*Harris v. Dall. Cnty. Hosp. Dist.*,
   2016 WL 2914847 (N.D. Tex. May 19, 2016) ...............................................14, 20

*Haverda v. Hays Cty.*,
   723 F.3d 586 (5th Cir. 2013) ......................................................................15

*Hinkley v. Envoy Air, Inc.*,
   968 F.3d 544 (5th Cir. 2020) .........................................................................9

*Hughes v. Brinker Intern., Inc.*,
   2008 WL 2325645 (5th Cir. 2008) ..............................................................18

*Jackson v. Cal-Western Packaging Corp.*,
   602 F.3d 374 (5th Cir. 2010) ......................................................................15

*Jones v. Dallas Cnty.*,
   47 F. Supp. 3d 469 (N.D. Tex. 2014) ..........................................................20

*LaFleur v. Westridge Consultants, Inc.*,
   844 F. Supp. 318 (E.D. Tex. 1994) .............................................................16

*LeMaire v. La. Dep't of Transp. & Dev.*,
   480 F.3d 383 (5th Cir. 2007) ......................................................................14

*Lister v. Nat'l Oilwell Varco*,
   2013 WL 5515196 (S.D. Tex. Sept. 30, 2013) ............................................12

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) ................................................................17, 21

*Lyons v. Katy Indep. Sch. Dist.*,
   964 F.3d 298 (5th Cir. 2020) ......................................................................20

*Marsh v. Eastern Assoc. Estates Realty Corp.*,
   521 F. App'x 460 (6th Cir. 2013) ...............................................................16

*McCuin v. Burlington N. and Santa Fe Ry. Co.*,
   2002 WL 31802845 (N.D. Tex. Decl. 11, 2002) .........................................17

*Munoz v. Seton Healthcare, Inc.*,
   557 F. App'x 314 (5th Cir. 2014) ...............................................................20

*Noel v. Shell Oil Co.*,
   261 F. Supp. 3d 752 (S.D. Tex. 2017). ..................................................10, 11

*Pratt v. City of Houston, Tex.*,
   247 F.3d 601 (5th Cir. 2001) ......................................................................15

*Price v. Fed. Exp. Corp.*,
   283 F.3d 715 (5th Cir. 2002) ......................................................................15

*Quevedo v. Lantower Luxury Living, LLC*,
   2023 WL 3010197 (W.D. Tex. Apr. 18, 2023*)*.........................................14

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000)...................................................................................15

*Reyes v. Texas Ezpawn, L.P.*,
   459 F. Supp. 2d 546 (S.D. Tex. 2006) ........................................................8

*Richard v. Cingular Wireless LLC*,
   233 F. App'x 334 (5th Cir. 2007) ..............................................................19

*Sinegal v. Martin Marietta Materials, Inc.*,
   2020 WL 2106694 (S.D. Tex. Apr. 9, 2020) .............................................18

*Tawil v. Cook Children's Healthcare Sys.*,
   582 S.W.3d 669 (Tex. App. 2019) .............................................................21

*Univ. of Tex.-Pan Am. v. Miller*,
   2013 WL 4818355 (Tex. App.—Austin Aug. 28, 2013, no pet.) ...............9

*Univ. of Tex. Med. Branch at Galveston v. Petteway*,
   373 S.W.3d 785 (Tex. App.—Houston [14th Dist.] 2012, no pet.)...........12

*Williams-Pyro, Inc. v. Barbour*,
   408 S.W.3d 467 (Tex. App.—El Paso 2013, pet. denied) ...........................9

**Statutes**

Age Discrimination in Employment Act, 29 U.S.C. §§ 623 *et seq.* ................................20

Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ......................................20

Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*...........................................20

Tex. Lab. Code § 21.051 .............................................................................................9

**Other Authorities**

Federal Rule of Civil Procedure 56 ...........................................................................1, 8

## I.    SUMMARY

MVM provides diversified security services to private and public entities. It specializes in providing services to federal agencies throughout the U.S. Departments of Defense, Justice, Homeland Security, Health and Human Services, and State, as well as the Social Security Administration. (Ex. 23, Declaration of Viesca ("Viesca Dec."), ¶ 3).  MVM employed Plaintiff for almost five years as a Transportation Specialist. (*Id.* ¶ 4; Mendoza Dep. 45:20-22, 50:11-15). His job was to accompany undocumented immigrant children and families who were sent on flights within and outside the United States by the Office of Refugee Resettlement. (Mendoza Dep. 17:6-13, Ex. 2).

MVM terminated Plaintiff's employment because he was found to have neglected his duties and violated MVM policies on two dates in June 2022. On June 1, 2022, Plaintiff failed to perform work during a deportation flight, and on June 4, 2022, he slept while on duty on two flights while using earphones.

Plaintiff's contention that Defendants terminated his employment to discriminate against him based on his sex and to retaliate against him are meritless. To begin with, KG&P did not terminate Plaintiff's employment because this company did not employ him. KG&P is thus entitled to summary judgment not only because Plaintiff failed to identify this company in his administrative Charge of Discrimination, thereby failing to exhaust administrative remedies, but KG&P cannot be liable to Plaintiff because it was not his "employer" under Chapter 21.

With respect to his claims against MVM, Plaintiff's allegations of discrimination and retaliation are merely after-the-fact excuses, lodged by someone who refuses to take responsibility for his misconduct. The undisputed evidence shows that MVM did not unlawfully discriminate or retaliate against Plaintiff; rather, the Company had a legitimate, non-discriminatory, and non-retaliatory reason for terminating his employment. Indeed, it is difficult to imagine a more

legitimate reason to terminate someone's employment than photographic evidence, and his own admission, that he was sleeping while on duty, particularly while he was charged with monitoring undocumented immigrant children during flights across the United States.

For the reasons detailed herein, Defendants are entitled to summary judgment on Plaintiff's claims, and this unmeritorious lawsuit should be dismissed.

## II.    UNDISPUTED MATERIAL FACTS

### A.    Overview of Plaintiff's Hire and Job Duties.

MVM hired Plaintiff on January 13, 2018, as a Transportation Specialist also known as a Child and Family Protection Care Specialist ("CFPCS"). (Mendoza Dep. 13:1-8, 16:22-24, 17:3-5).[1] Plaintiff's job was to accompany undocumented immigrant children and families who were sent on flights within and outside the United States by the Office of Refugee Resettlement. (Mendoza Dep. 18:7-19:2, 19:16-24, Ex. 2).

When receiving a new work assignment, Plaintiff would be given logistical information, which he would review with his assigned partner to divide duties, before picking-up and transporting the minors assigned to him. (Mendoza Dep. 53:24–55:11). Specific tasks to be completed included phone calls with Customs and Border Patrol to coordinate pick-up and drop-off, calling hotels and airlines as needed, ensuring the minors were all sitting together on the flight, completing paperwork including "line of sight" paperwork detailing what the minors were doing every hour, and attending to the minors' needs (food, restroom, etc.). (Mendoza Dep. 55:12-57:23). One of the essential functions of Plaintiff's job was to "maintain line-of-sight and sound supervision of each minor and/or family units during transport," meaning he had to be able to physically see and hear his charges at all times. (Mendoza Dep. 21:2-13, Ex. 2).

---

[1] At no time did Plaintiff have any reason to think he was employed by KG&P, as opposed to MVM, and his W2s were issued by MVM. (Mendoza Dep. 13:22-14:14, 15:22-25, 16:12-16, Ex. 1).

**B.    Plaintiff Was Aware of MVM Policies, Including the Prohibition Against Sleeping on Duty.**

Plaintiff was aware that he was prohibited from sleeping while on duty and was required to be able to see and hear his charges at all times. Not only was this unquestionably a matter of common sense, but Plaintiff acknowledged *numerous* MVM policies that explicitly prohibited sleeping on duty.

First, MVM's Employee Handbook contained a Code of Conduct that provides examples of unacceptable behavior, including "[n]egligence: sleeping on duty or being in a relaxed and inattentive position while on duty." (Mendoza Dep. 47:1-7, 50:16-22; Ex. 9 at 14, 53). Plaintiff received a copy of the Handbook, had the opportunity to review it, and knew he could go to Human Resources if he had any questions. (Mendoza Dep. 47:5-24).

Second, MVM's Written Standards of Conduct prohibited sleeping on duty, stating in relevant part:

> The following are examples of conduct that is inappropriate … Engaging in such conduct may result in discipline up to and including immediate termination of employment. …
>
> 14. Negligence: sleeping on duty/being in an inattentive position while on duty, using earbuds on duty, abandoning duty, leaving duty without proper authority, failing to perform duties as prescribed …

(Ex. 24, April 21, 2021 Written Standards of Conduct). Plaintiff signed an acknowledgment that he had read and understood the Written Standards of Conduct on November 2, 2019.[2] (Ex. 7).

Third, MVM's Standard Operating Procedures ("SOP"), which included policies regarding Allegations of Misconduct and Transportation by Air, specifically prohibited sleeping while on duty. The SOP stated in relevant part:

> Personnel misconduct may include, … Neglect of duty, including sleeping while on duty, unreasonable delays or failure to carry out assigned tasks, conducting personal affairs

---

[2] This policy was periodically updated, but the quoted provision was in effect as of November 2, 2019, and remained in effect throughout Plaintiff's employment. (Mendoza Dep. 44:3-11; Ex. 8; Ex. 23; Viesca Dec., ¶ 5).

during official time, refusing to render assistance, lack of diligence, or good judgment.

(Ex. 25, April 21, 2021 SOP Allegation of Misconduct).

The CFPCS shall maintain constant line-of-sight and sound supervision of each UNC[3] during transport.

(Ex. 26, April 21, 2021 SOP Transportation by Air).

Plaintiff underwent refresher training and signed an acknowledgment that he read and understood these SOPs on March 3, 2022. (Mendoza Dep. 35:3-13; Ex. 4). Two days later he signed an acknowledgment[4] that he read and reviewed the SOP for these two policies. (Mendoza Dep 27:14-25; Ex. 3).

Removing any doubt about whether or not Plaintiff knew he was prohibited from sleeping while on duty, Plaintiff admitted at deposition: (1) he knew these policies[5] required that he be able to see and hear his charges at all times; (2) he knew sleeping on the job was inappropriate and he could be fired for doing so; and (3) he knew other Transportation Specialists had been fired by MVM for sleeping on the job. (Mendoza Dep. 36:11-21, 39:12-24, 70:1-17, 81:12-15, 81:24-82:9).

### C.    In June 2022, MVM Investigates Two Complaints About Plaintiff's Performance, Including Sleeping on Duty.

On June 4, 2022, MVM assigned Plaintiff and a co-worker named Elizabeth Cardenas work to transport three unaccompanied noncitizen female children from Texas to Maryland (Mendoza Dep. 52:1-11, 52:22-53:16; Ex. 10). The trip required Plaintiff and Cardenas to pick the children up from the Donna, Texas immigration shelter and fly with them from McAllen, Texas to Houston, Texas and then on to Washington, D.C., where they would rent a car to drop the children off at the facility in Maryland. (Mendoza Dep. 52:6- 53:7, 54:21-55:11, 62:12-17; Ex. 10). After the trip, on

---

[3] "UNC" stands for Unaccompanied Noncitizen Children. (Mendoza Dep. 35:18-26: 2; Ex. 5).
[4] Employees reviewed the April 2021 policies during the March 3, 2022 refresher training. (Ex. 23, Viesca Dec., ¶ 5).
[5] The April 2021 SOPs and April 30, 2022 SOPs are substantively the same. (Mendoza Dep. 37:4-13, 42:10-17; Exs. 6, 7, 8, 23, Viesca Dec., ¶ 5).

June 5, 2022, Cardenas sent an email to supervisor Jose Guerra and Site Manager Elba Navarro reporting that Plaintiff was not helpful despite being the team lead and fell asleep on both flights. (Ex. 27, June 2022 Email Thread re Elizabeth Cardenas's June 5, 2022 Complaint about Plaintiff and Photographs of Plaintiff Sleeping on Duty; Ex. 28, Declaration of Navarro ("Navarro Dec."), ¶ 4; Ex. 23, Viesca Dec., ¶ 7).  The email from Cardenas included photographs of Plaintiff wearing earphones and sleeping while sitting next to a female minor whom he was accompanying. (Mendoza Dep. 60:13-15, 63:15-64:24, 65:4-11, 67:1-68:14, 68:24-69:4; Exs. 11-12). The next day, on June 6, 2022, Navarro forwarded the email from Cardenas to Human Resources Business Partner Ofelia Viesca, so Viesca could begin an investigation into the complaint.

On June 7, 2022, an Immigration and Customs Enforcement ("ICE") Agent reported to Logistics Field Supervisor Juan Garcia that he had observed Plaintiff failing to assist his teammates during a deportation flight on June 1, 2022. (Ex. 27, June 5, 2022 Email from Cardenas). Garcia reported this complaint to Navarro who informed Viesca. (*Id.*)

Viesca investigated both Cardenas's complaint about the June 4th trip and the ICE Agent's complaint about the June 1st trip. (Mendoza Dep. 61:8-19, 71:20-74:2). Viesca interviewed Cardenas on June 6, 2022. (Ex. 29, Viesca's Notes from Interview of Elizabeth Cardenas). Cardenas elaborated that Plaintiff was asleep for nearly the entirety of both flights that day, commenting that she had to wake Plaintiff up upon landing in Washington D.C. (*Id.*).

Viesca interviewed Plaintiff on June 7, 2022. (Mendoza Dep. 61:14-19). Despite the photographic evidence, Plaintiff initially denied he was sleeping[6] and said he had only closed his eyes.  (Ex. 30, Viesca's Notes from Interview of Plaintiff). When Viesca questioned whether

_____

[6] This was not accurate because Plaintiff admitted that he slept during a portion of the flight. (Mendoza Dep. 64:13-24). And, after showing him the photographs Cardenas has provided, Plaintiff admitted that they both depicted him sleeping while on duty during both flights. (Mendoza Dep. 67:1-69:4; Exs. 11-12).

Plaintiff was wearing earphones in violation of Company policy, as depicted in one of the photographs, he admitted using them. (*Id.;* Mendoza Dep. 69:5-9). He did not answer when asked if he ever sought or obtained approval to use them. (Ex. 23, Viesca Dec., ¶ 10; Mendoza Dep. 69:22-25). Plaintiff also confirmed to Viesca that he was familiar with the SOPs, including the requirement that he always maintain line of sight and sound to the unaccompanied minors. (Mendoza Dep. 1-17). Notably, Plaintiff did not complain about alleged sex discrimination or retaliation during this interview. (Ex. 23, Viesca Dec., ¶ 10).

Viesca told Plaintiff he could submit a written response regarding these incidents, which he did. (Mendoza Dep. 74:18-75:10, Ex. 13). In his response, Plaintiff admitted he could have done a better job in regard to closing his eyes, especially since others were fired for sleeping. (Mendoza Dep. 80:24-81:11, 82:4-7, Ex. 13). Again, Plaintiff did not complain of alleged sex discrimination or retaliation.  (Ex. 23, Viesca Dec., ¶ 10; Ex. 28, Navarro, ¶ 10).

After completing her investigation,[7] Viesca spoke with Navarro and Program Manager Joseph Arabit. (Ex. 23 Viesca Dec., ¶ 12; Ex. 28, Navarro, ¶ 9; Exhibit 33, Declaration of Joseph Arabit ("Arabit Dec."), ¶ 6). Based on their review of the complaints from Cardenas and the ICE Agent, Plaintiff's interview, and Plaintiff's written response, the group determined that Plaintiff had engaged in misconduct during the incidents on June 1 and June 4, 2022, by sleeping on duty, being inattentive, using earphones while on duty, and failing to perform duties as prescribed. (*Id.*) They gave some consideration to the lesser punishment of a written warning, but because of the overwhelming proof that Plaintiff had been sleeping on duty and using earphones thus failing to

---

[7] Notably, Plaintiff was also under investigation by the ICE Office of Professional Responsibility as of June 2022 regarding an altercation he had with a neighbor. (Mendoza Dep. 92:19-93:25). MVM became aware of the investigation on June 13, 2022. (Ex. 31, June 13, 2022 Email from Viesca re ICE Investigation of Plaintiff). The ICE investigation substantiated that Plaintiff used profanity, misused his position, and failed to report a law enforcement contact, but did not report the existence of its investigation or its findings to MVM until September 14, 2022. (Mendoza Dep. 100:2-14; Ex 14).

maintain line of sight and sound while accompanying minors in his charge, they decided that employment termination was appropriate.[8] (Ex. 23, Viesca, ¶ 12).[9]

Viesca and Navarro spoke with Plaintiff to inform him of the decision on June 10, 2022. (Ex. 32, Viesca's Notes from Plaintiff's Termination Meeting). They explained that they completed their investigation, described the two incidents and the pictures of Plaintiff sleeping from June 4, 2022, and informed him that his employment was terminated for failing to maintain line of sight and sound by sleeping on duty, being in an inattentive position, and failing to perform his duties. (Mendoza Dep. 87:4-89:5; Ex. 23 Viesca Dec., ¶ 13).

**D.    Plaintiff Never Complained to MVM of Discrimination or Retaliation Prior to Initiating this Litigation.**

Plaintiff knew that MVM's Equal Employment Opportunity policy prohibits discrimination on account of sex as well as retaliation for opposing unlawful employment practices. (Mendoza Dep. 48:2-13; Ex. 9 at 7, 10-11). Plaintiff also knew of MVM's procedure for filing internal complaints of discrimination and the prohibition against retaliation for reporting such complaints. (Mendoza Dep. 48:20-25; Ex. 9 at 9-10). Nevertheless, during the call with Viesca and Navarro to discuss his termination, Plaintiff did not dispute the findings, mention discrimination or retaliation, or say anything to suggest that he believed his termination had anything to do with his sex.[10] (Ex. 23, Viesca Dec., ¶ 13; Ex. 28, Navarro, ¶ 10). In fact, Plaintiff never made a complaint of discrimination at any time during his employment. (Mendoza Dep. 49:1-5; Ex. 23, Viesca Dec., ¶ 17; Ex. 28, Navarro, ¶ 11; Exhibit 33, Arabit Dec., ¶ 7).

---

[8] MVM previously terminated the employment of eight other Transportation Specialists, three of whom are female, who were caught sleeping on duty. (Ex. 23, Viesca Dec., ¶ 16).

[9] Plaintiff admits that he never had a problem of any kind with Navarro, Arabit, or Viesca, and believes they always treated him fairly. (Mendoza Dep. 23:1-14, 123:15-17, 124:3-5, 146:22-147:7).

[10] Plaintiff also admitted to the Texas Workforce Commission that he was fired for violation of company policy and procedure, and MVM had pictures of him sleeping with his eyes closed, and that others were fired for the same conduct. (Mendoza Dep. 103:19-104:4, 105:22-106:25, Ex. 15).

Two weeks after his termination, Plaintiff sent an email to MVM President and CEO Kevin Marquez complaining, not that he was wrongfully terminated, but for "pay[ing] the price" for his coworker's decision to report his misconduct rather than waking him up. He reiterated that he understood his mistake, stating: "closing my eyes after a long trip happens…." Notably, however, nowhere in his email did Plaintiff allege that this decision had anything to do with his sex – let alone that the decision was discriminatory or retaliatory.  (Ex. 34, June 26, 2022 Email From Plaintiff to CEO Kevin Marquez). The first time that Plaintiff ever accused MVM of discriminating or retaliating against him was when he filed his EEOC Charge on or about November 15, 2022. (Ex. 23, Viesca Dec., ¶ 17; Ex. 28, Navarro, ¶ 11; Ex. 33, Arabit Dec., ¶ 7).

## III.    ARGUMENTS & AUTHORITIES

### A.    Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, affidavits, and other documents "show[] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c). If the undisputed material facts demonstrate that the plaintiff will be unable to satisfy the legal requirements necessary to establish his case, summary judgment is not only appropriate, but mandated.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To avoid summary judgment, a plaintiff must go outside the pleadings and produce admissible evidence demonstrating that specific facts raise genuine issues for trial. *Id.* at 324. This means they must present more than "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Reyes v. Texas Ezpawn, L.P.*, 459 F. Supp. 2d 546, 550 (S.D. Tex. 2006) (quoting *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).

**B.     KG&P is Entitled to Summary Judgment Because Plaintiff Failed to Exhaust Administrative Remedies with Respect to Any Claims Against KG&P.**

The plaintiff must exhaust administrative remedies by filing an administrative complaint with the Texas Workforce Commission before filing a lawsuit under Chapter 21. *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 552 (5th Cir. 2020); *Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 475 (Tex. App.—El Paso 2013, pet. denied). The administrative charge must "put the employer on notice of the existence and nature of the charges." *Barbour*, 408 S.W.3d at 475; *Univ. of Tex.-Pan Am. v. Miller*, No. 03-10-00710-CV, 2013 WL 4818355, *6 (Tex. App.—Austin Aug. 28, 2013, no pet.) (Chapter 21 requires the Charge to provide "facts sufficient to enable the [Commission] to identify the respondent.") (quoting Tex. Lab. Code § 21.201(c)(3)); *Equal Emp. Opportunity Com'n v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 754 (5th Cir. 2020) (noting that "charge [must] be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'") (quoting 29 C.F.R. § 1601.12).

Here, Plaintiff's administrative complaint neither identified KG&P as his "employer" nor made any reference to KG&P anywhere. Thus, Plaintiff failed to exhaust administrative remedies with respect to KG&P, and it is entitled to summary judgment.

**C.     KG&P is Entitled to Summary Judgment Because It Did Not Employ Plaintiff.**

Chapter 21 only applies to acts of an "employer." Tex. Lab. Code § 21.051; *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 649 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("To recover under the TCHRA, a plaintiff must prove that the defendant falls within the statutory definition of 'employer.'"). Plaintiff was only employed by MVM – not KG&P. (Ex. 23, Viesca Dec., ¶ 4). Plaintiff admits that he was employed by MVM, and he has no reason to believe he was ever employed by KG&P. (Mendoza Dep. 16:1-16). Since KG&P was not Plaintiff's employer, it is entitled to summary judgment.

**D.    MVM Terminated Plaintiff's Employment Because He Engaged in Misconduct -- Not Because of his Sex.**

Plaintiff's first claim that MVM terminated his employment because of his sex is baseless. Plaintiff must first make a *prima facie* case by demonstrating he: (1) is a member of a protected class; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was replaced by or was treated less favorably than someone outside of his protected class. *Noel*, 261 F. Supp. 3d at 766-67.[11] After a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions. *Id.* If the defendant satisfies this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. *Id.*

For purposes of this Motion, Defendants do not contest that Plaintiff can establish the first three elements of his *prima facie* case. However, the undisputed material facts establish that Plaintiff cannot demonstrate the fourth element because he cannot show that he was replaced by, or treated less favorably than, someone outside of his protected class. Even if he could, it is undisputed that MVM had a legitimate, non-discriminatory reason for terminating Plaintiff's employment because of his misconduct on the job. Moreover, Plaintiff has no evidence that this rationale was merely pretext to terminate his employment because of his sex. For all of these reasons, Defendants are entitled to summary judgment.

1.    Plaintiff Cannot Make a *Prima Facie* Case of Sex Discrimination.

As he admitted at his deposition, Plaintiff's entire case rests on his assertion that a female employee, Nancy Whitmire, was not fired for sleeping on the job. (Mendoza Dep. 107:20-24,

---

[11] Texas courts apply analogous federal statues and cases when interpreting Chapter 21, including the *McDonnell Douglas* test. *See Braymiller v. Lowe's Home Ctrs. Inc.*, 325 F. App'x 311, 313 (5th Cir. 2009); *Noel v. Shell Oil Co.*, 261 F. Supp. 3d 752, 766-67 (S.D. Tex. 2017), *report and recommendation adopted,* 2017 WL 4082314 (S.D. Tex. Sept. 13, 2017).

118:11-15).[12] However, as explained below, Whitmire is not a proper comparator as a matter of law.

Whitmire is a former Transportation Specialist. (Ex. 23, Viesca Dec., ¶ 14). On or about March 1, 2022, Whitmire was assigned to a family units' trip to Guatemala with 130 adults and children, 6 Transport Specialists, 2 ICE agents, and 2 nurses. (*Id.*). Whitmire was not assigned custody of any particular individuals. (*Id.*). After the flight, MVM received a complaint that Whitmire was sleeping while on duty. (*Id.*). MVM investigated the complaint and determined that Whitmire slept during the flight for approximately 20 to 25 minutes. (*Id.*). Whitmire had no other misconduct complaints made against her. (*Id.*). During its investigation, MVM discovered that Whitmire had a pending internal complaint about union-organizing retaliation. (*Id.*). Accordingly, MVM decided to issue Whitmire a Final Written Warning and remove her from transportation duties. (*Id.*).

It is well-established that an employee cannot claim discrimination merely because they believe a coworker was shown leniency for engaging in similar behavior. Instead, "an employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances."

*Donaldson v. Texas Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 429 (Tex. App.—Houston [1st Dist.] 2016, pet. denied.) (formatting in original) (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009)). "[T]o establish that employees are 'comparable in all material respects,' a plaintiff must also show 'that there were no 'differentiating or mitigating circumstances as would distinguish ... the employer's treatment of them.'" *Id.* (quoting *Ineichen*

---

[12] Plaintiff admitted that no single employee replaced him at MVM because there is a lot of turnover and MVM hires in bunches. (Mendoza Dep. 122:21-123:14). Plaintiff therefore cannot establish the fourth element his *prima facie* case based on being replaced. *See Noel*, 261 F. Supp. 3d at 766-67.

*v. Ameritech,* 410 F.3d 956, 960–61 (7th Cir. 2005)). The comparator must have the same job responsibilities, and the same or similar history of violations or infringements. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017). Here, Plaintiff is relying on the mere fact that he believes Whitmire was not terminated despite being caught sleeping, but it is undisputed that he and Whitmire were not similarly situated for several reasons.

First, they had different job duties. As detailed in section II.C, Plaintiff was assigned custody of several children he was escorting during two flights when he was sleeping on duty. By contrast, on the flight in which Whitmire allegedly slept, she was not charged with accompanying any particular individuals – let alone children. (Ex. 23, Viesca Dec., ¶ 15). This alone means that they were not "similarly situated" because they had different job duties, and thus, they were not treated differently under "nearly identical circumstances." *See Alkhawaldeh*, 851 F.3d at 426; *Cnty. of El Paso v. Aguilar*, 600 S.W.3d 62, 84 (Tex. App.—El Paso 2020, no pet.) (employees with different responsibilities are not similarly situated).

Second, they did not engage in the same misconduct. *See Alkhawaldeh*, 851 F.3d at 426 (comparator must have same or similar history of violations or infringements); *Donaldson*, 495 S.W.3d at 435; *Lister v. Nat'l Oilwell Varco*, No. H-11-108, 2013 WL 5515196, at *22 (S.D. Tex. Sept. 30, 2013) ("[T]o be 'similarly situated,' employees must '… have essentially comparable violation histories.'") (quoting *Lee*, 574 F.3d at 259-60). In *Univ. of Tex. Med. Branch at Galveston v. Petteway*, the court considered two employees one of whom was fired and the other who was not, and held that they were not similarly situated because one had a complaint of sexual harassment against her while the other did not. 373 S.W.3d 785, 789-90 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Morrow v. Wal–Mart Stores, Inc.*, 152 F.3d 559, 562 (7th Cir. 1998)). Here, in addition to sleeping on duty, Plaintiff admitted to using earphones while on duty June 4, which is another form of misconduct, and had a second complaint of failing to perform his

12

duties during a flight on June 1. Unlike Plaintiff, Whitmire was neither accused nor found to have engaged in any other misconduct, and this fact alone differentiates her from Plaintiff. *See id.*; (Ex. 23, Viesca Dec., ¶ 15).

Third, Whitmire had a pending internal complaint about union-organizing retaliation; Plaintiff had no similar pending complaints. (Ex. 23, Viesca Dec., ¶ 15). This further distinguishes Whitmire as it represents "mitigating circumstances" Plaintiff did not have. *See Donaldson*, 495 S.W.3d at 435 (quoting *Ineichen,* 410 F.3d at 960–61).

Plaintiff also admitted that he has no knowledge of any facts about Whitmire other than that she was out of work for a period of time. (Mendoza Dep. 108:5-109:7, 110:8-11, 111:15-112:5).[13] As noted, employees must have the same job duties and disciplinary history, and no other differentiating factors to be similarly situated. *Alkhawaldeh*, 851 F.3d at 426; *Donaldson*, 495 S.W.3d at 435. Because it is undisputed that Plaintiff and Whitmire had different job duties at the time of their misconduct, Plaintiff engaged in multiple forms of misconduct, and because Whitmire had mitigating factors to distinguish her treatment from Plaintiff's, the employment actions were not taken under "nearly identical circumstances," and she is not a proper comparator. *Donaldson*, 495 S.W.3d at 435.

### 2. MVM's Legitimate Reason for Terminating Plaintiff's Employment Was Not Pretext.

Assuming Plaintiff can make his *prima facie* case (which he cannot), it is undisputed that MVM had a legitimate, nondiscriminatory reason for terminating his employment: Plaintiff's substandard and neglectful job performance on June 1 and June 4, 2022, that also violated multiple

---

[13] The entire basis for Plaintiff's claim is that he heard rumors from two coworkers that Whitmire was not fired despite sleeping on duty. This is inadmissible hearsay without exception and cannot support his claim. *See Evans v. Miley*, No. 9:21-CV-00052, 2023 WL 8295995, at *5 (E.D. Tex. Sept. 22, 2023) (discussing hearsay) (citing Fed. R. Evid. 801); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 661 (5th Cir. 1976) (holding that inadmissible hearsay cannot be used to avoid summary judgment as a matter of law). Absent any other evidence, he cannot make a *prima facie* case.

MVM policies. *Quevedo v. Lantower Luxury Living, LLC*, No. 1:21-CV-00141-RP, 2023 WL 3010197, at *7 (W.D. Tex. Apr. 18, 2023), *report and recommendation adopted*, No. 1:21-CV-141-RP, 2023 WL 3484029 (W.D. Tex. May 16, 2023) ("Poor work performance and unprofessional behavior are legitimate, nondiscriminatory reasons for termination."); *Harris v. Dall. Cnty. Hosp. Dist.*, 2016 WL 2914847, at *10 (N.D. Tex. May 19, 2016) ("Violation of company policy is a legitimate, nondiscriminatory reason for termination."). There is no question that Plaintiff engaged in misconduct; his own admissions establish this fact beyond dispute.

- Plaintiff admitted he slept during two flights on June 4, 2022, while he had unaccompanied minors in is custody;[14]
- Plaintiff admitted he wore earphones during his flights;
- Plaintiff admitted two photographs taken of him depicted him sleeping and one depicted him using earphones on the June 4, 2022 flights;
- Plaintiff admitted he knew sleeping on duty was a violation of MVM policy that could result in termination;
- Plaintiff admitted he knew he was required to maintain constant line of sight and hearing of the minors in his custody and did not do so;
- Plaintiff admitted he knew other Transportation Specialists actually were terminated for sleeping while on duty; and
- MVM substantiated that Plaintiff failed to carry out his duties on June 1, 2022, as reported by an ICE Agent.

These are, undisputedly, examples of Plaintiff neglecting his duties and violating MVM policy, and are legitimate reasons for terminating Plaintiff's employment. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 589 (5th Cir. 2020) (termination for sleeping on job legitimate); *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (termination for sleeping on job, being four hours late, and failing to complete job duties is legitimate).

    To show this reason is pretext for discrimination, Plaintiff must show the justification is

---

[14] Plaintiff's contention regarding how long he slept for is immaterial. The relevant fact is that he admitted he slept in violation of MVM policy.

false. *Pratt v. City of Houston, Tex.*, 247 F.3d 601, 606 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (at pretext stage plaintiff must show proffered reason was not the true reason for adverse employment action); *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). At this stage Plaintiff must show more than just that he can make a *prima facie* case. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) ("[A] plaintiff's prima facie case, ***combined with*** sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.") (emphasis added) (quoting *Reeves*, 530 U.S. at 147–48). It is impossible for Plaintiff to make this showing because he admitted the underlying misconduct (*i.e.*, he admits to sleeping on the job and using earphones) to Viesca, the Texas Workforce Commission, and in his post-termination letter to Marquez. Thus, he admits that MVM's proffered reason for terminating him was true, precluding him from proving it was pretextual. *Reeves*, 530 U.S. at 148 (plaintiff must show proffered reason was ***not*** the true reason).

It is worth noting that even if Plaintiff disputed some specific details of the underlying events, he still cannot prove pretext. (Mendoza Dep. 80:5-16, 80:17-23). It is well settled law that pretextual motives cannot be proved "merely by disputing the truth of the underlying facts for that reason [because] [s]uch evidence alone merely implies that an employer may have made a mistake in deciding to take action against an employee," which is not illegal. *Haverda v. Hays Cty.*, 723 F.3d 586, 596 n.1 (5th Cir. 2013). "In cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but whether the employer reasonably believed the employee's allegation and acted in good faith." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010). Thus, although Plaintiff claims he did not sleep the entirety of one of the flights, it remains undisputed that MVM reasonably believed the accounts of Plaintiff's colleagues (especially as Plaintiff admitted much

15

of the underlying conduct) and acted in good faith based on those accounts to find Plaintiff was neglectful in his duties and violated company policy. *See LaFleur v. Westridge Consultants, Inc.*, 844 F. Supp. 318, 323 (E.D. Tex. 1994) (holding it "irrelevant" whether the plaintiff's conduct was actually unsatisfactory because the only inquiry is whether the defendant "had a good faith belief that [the plaintiff's] conduct was unsatisfactory").

Defendants anticipate that Plaintiff will again try to rely on his comparison to Whitmire to prove pretext for sex discrimination. However, he cannot because Whitmire is not a proper legal comparator for the reasons described in section III.D.1, above. Plaintiff's attempt to rely on his singular example is even more absurd when MVM has terminated other employees – both males and females – for sleeping on the job. Indeed, MVM has terminated the employment of eight other Transportation Specialists since December 2021, three of whom were female. (Ex. 23, Viesca Dec., ¶ 16). Accordingly, any persuasive force Plaintiff ascribes to alleged different treatment with respect to Whitmire is fatally undermined by the fact that MVM has made the decision to terminate other females for sleeping on the job.

Moreover, even if Whitmire alone would be sufficient to state a *prima facie* case, it is undisputed that the decision to terminate Plaintiff was not pretext because MVM has taken the exact same disciplinary action against both male and female employees for sleeping on the job.

Furthermore, Plaintiff has zero evidence that any of the decision-makers harbored a discriminatory animus against him because of his sex. To begin with, Plaintiff does not know who the decision-makers were or who even believes discriminated against him. (Mendoza Dep. 112:22-113:4, 118:18-119:10). This undermines his claim because if he did not know who made the decision to terminate his employment then he cannot plausibly accuse them of disliking him because of his sex. *See Marsh v. Eastern Assoc. Estates Realty Corp.*, 521 F. App'x 460, 467 (6th Cir. 2013) (affirming summary judgment in an age discrimination case where the plaintiff did not

affirmatively know who made the decision at issue); *McCuin v. Burlington N. and Santa Fe Ry. Co*., No. 4:01-CV-898-A, 2002 WL 31802845, at *4 (N.D. Tex. Decl. 11, 2002) (holding that the plaintiff's ignorance about who the decision-makers were with respect to his attempt to return to work prevented him from proving racial discrimination). Plaintiff also admits that no one ever made any negative comments to him about his sex. (Mendoza Dep. 122:21-24). Lastly, Plaintiff admits to having no problems with Viesca, Navarro, or Arabit – the decisionmakers with respect to his termination. On the contrary, Plaintiff testified that Navarro and Arabit always treated him fairly. (Mendoza Dep. 23:1-14, 24:17-25:1, 123:15-17, 124:3-5, 146:22-147:7). In light of these crucial admissions, and the absence of any evidence that he was treated poorly compared to female employees, he cannot make a *prima facie* case of discrimination or show pretext. Judgment should enter for Defendants.[15] *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994) ("The absence of evidence to support the plaintiffs' theories of recovery made this case clearly and plainly appropriate for summary judgment.").

Defendants anticipate that Plaintiff will complain that he was not afforded progressive discipline, and therefore, the reason for termination was pretext. However, this argument does not hold water. To begin with, MVM does not guarantee any employee progressive discipline prior to termination. (Ex. 23, Viesca Dec., ¶ 6). Plaintiff was also fully aware that MVM policy provided for the possibility of progressive discipline, but clearly stated there was no guarantee that an employee would be entitled to progressive discipline prior to termination for misconduct. Specifically, the Handbook section regarding Disciplinary Action provides:

> Violations of our standards will result in corrective action ranging from informal counseling … to termination of employment. The company reserves the right to choose which type of corrective action is appropriate for the situation and ***does not guarantee*** that an employee will be provided either a verbal or written warning, or suspension before

---

[15] Plaintiff, again, also admitted he was not replaced, so cannot argue he was replaced by someone outside his protected class. (Mendoza Dep. 122:21-123:14).

termination.

(Mendoza Dep. Ex. 9 at 53) (emphasis added).

Moreover, the law is clear that an employer's decision not to use progressive discipline does not prove pretext. *see Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 212 (5th Cir. 2018) (finding no evidence of pretext where employer failed to follow its non-mandatory progressive discipline policy).

In summary, there is simply no evidence in the record which could indicate Plaintiff was not truly terminated for falling asleep on the job, being inattentive on the job, and using earphones. Plaintiff's own subjective speculation for why MVM terminated his employment is irrelevant. The Fifth Circuit has held that a plaintiff's "subjective speculation" about the motivation behind an employment action is insufficient to establish a claim. *See Hughes v. Brinker Intern., Inc*., Case No. 07-11104, 2008 WL 2325645, at *1 (5th Cir. 2008) (per curiam) (*citing Roberson v. Alltel Information Services*, 373 F.3d 647, 654 (5th Cir. 2004) (finding summary judgment should be granted where plaintiff offered no evidence other than his subjective opinion that coworker acted with discriminatory animus)). It is therefore undisputed that Plaintiff cannot prove MVM's legitimate reason for terminating his employment was pretext, and Defendants are entitled to summary judgment. *See Sinegal v. Martin Marietta Materials, Inc*., No. 3:18-CV-00360, 2020 WL 2106694, at *5 (S.D. Tex. Apr. 9, 2020*), report and recommendation adopted*, No. 3:18-CV-00360, 2020 WL 2104941 (S.D. Tex. May 1, 2020) (granting summary judgment where undisputed record shows defendant conducted investigation after reported that plaintiff sleeping on the job in violation of policy, terminated after investigation complete, and only then did plaintiff raise potential unlawful basis for termination).

**E.**    **MVM Terminated Plaintiff's Employment Because He Engaged in Misconduct – Not to Retaliate Against Him.**

Plaintiff's claim for retaliation fails for essentially the same reasons: he cannot make a *prima facie* case or show pretext. To make a *prima facie* case, Plaintiff must show that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal connection between participation in the protected activity and the adverse employment decisions. *Id.*[16] A plaintiff engages in protected activity if he has "opposed any practice made an unlawful employment practice under [Chapter 21]." *Id.* This includes "among other things, filing an internal complaint, opposing a discriminatory practice, or making a charge of discrimination with the EEOC. The employee's complaint must, at a minimum, alert the employer to the employee's reasonable belief that unlawful discrimination is at issue." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 786 (Tex. 2018).

Plaintiff did not engage in protected activity. Plaintiff admitted that he never complained of discrimination during his employment. (Mendoza Dep. 49:1-5; Ex. 23, Viesca Dec., ¶ 17; Ex. 28, Navarro, ¶ 11; Ex. 33, Arabit Dec., ¶ 7). Plaintiff testified that during his call with Viesca on June 7, 2022, he complained that Cardenas was difficult, and that his written follow-up to the call generally reported that Cardenas was not a team player and made him do most of the work, but none of these complaints had anything to do with Plaintiff's sex. (Mendoza Dep. 62:12-63:14). Such complaints not related to any practice made unlawful by Chapter 21 are not protected activity as a matter of law. *See Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 337-338 (5th Cir. 2007) ("To satisfy the protected activity requirement, an employee must oppose conduct made unlawful by Title VII; complaining of unfair or undesirable treatment not addressed by Title VII

---

[16] Retaliation claims under Chapter 21also use the *McDonnell Douglas* burden shifting approach. *Gorman v. Verizon Wireless Tex., LLC,* 753 F.3d 165, 170 (5th Cir. 2014).

will not suffice.");[17] *Clark*, 544 S.W.3d at 786 (no protected activity under TCHRA where complaints were about mistreatment directed at plaintiff and others both male and female, without reference to plaintiff believing it was on account of sex); *Jones v. Dallas Cnty.*, 47 F. Supp. 3d 469, 499 (N.D. Tex. 2014) ("a reasonable jury could not find that [plaintiff] 'express[ing] dissatisfaction' with [defendant's] restructuring of upper management constituted activity protected under Title VII or § 1981."). A complaint that a colleague is not a team player and is difficult to work with is not protected activity. It is therefore undisputed that Plaintiff cannot make a *prima facie* case and judgment must enter for Defendants.

Even if Plaintiff did engage in protected activity, the same argument regarding the legitimate reasons for his termination discussed above apply here. Plaintiff admits he fell asleep on the job, that it was a violation of policy, and that others had been fired for the same violation. This is a legitimate, nonretaliatory reason for termination. *Harris*, 2016 WL 2914847, at *10. Plaintiff, again, has no evidence that this was not the true reason for his termination, and was actually pretext for retaliation. He admitted on his unemployment forms that this was the reason, and although his termination occurred just a few days after his complaint about Cardenas, even if that complaint had anything to do with sex, temporal proximity between protected activity and adverse action alone cannot support a finding of pretext. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 307 n.34 (5th Cir. 2020) (close temporal proximity alone may be sufficient for causal connection but not pretext) (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (highlighting that, although temporal proximity alone, when very close, can establish a

---

[17] Courts analyze retaliation claims under Chapter 21 under the same standards as their federal counterparts. *See, e.g., Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014) (analyzing retaliation claims under the ADA, Title VII, ADEA, TCHRA, and FMLA all using the same framework).

prima facie case of retaliation, it cannot serve as sufficient proof of pretext)); *Tawil v. Cook Children's Healthcare Sys.*, 582 S.W.3d 669, 683-84 (Tex. App. 2019).

Moreover, as noted above, Plaintiff admits to having no problems with Viesca, Navarro, or Arabit – the decisionmakers with respect to his termination, and that they always treated him fairly. (Mendoza Dep. 23:1-14, 123:15-17, 124:3-5, 146:22-147:7). In light of these admissions, and the absence of any other evidence whatsoever that he was retaliated against, he cannot make a *prima facie* case of retaliation or show pretext. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994) ("The absence of evidence to support the plaintiffs' theories of recovery made this case clearly and plainly appropriate for summary judgment.").

The undisputed material facts establish that Plaintiff did not engage in any protected activity prior to his termination of employment, and that MVM made the termination decision for legitimate, non-retaliatory reasons.  Judgment must enter for Defendants.

## IV.    CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant their motion, and order the judgment enter in favor of Defendants on all counts of Plaintiff's Complaint.


Dated: April 11, 2024                              Respectfully submitted,


*Of Counsel:*                                      /s/ Luke C. MacDowall
                                                   Luke C. MacDowall (Attorney-in-Charge)
Analiza Rodriguez                                  State Bar No. 24104445
State Bar No. 24110290                             S.D. Tex. ID No. 2983511
S.D. Tex. ID No. 3513522
LITTLER MENDELSON, P.C.                            **ATTORNEYS FOR DEFENDANTS**
1301 McKinney Street, Suite 1900                   **MVM, INC. AND KG&P STRATEGIES,**
Houston, TX  77010                                 **INC.**
Telephone:  713.951.9400
Facsimile:  713.951.9212

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served on the following counsel of record electronically by ECF notification on April 11, 2024:

Daniel E. Vargas
Vargas & Guerra, LLP
324 W. University Dr.
Edinburg, Texas 78539


*/s/ Luke C. MacDowall*
Luke C. MacDowall

4879-2712-5680.6 / 028330-1646