# EXHIBIT 23

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **MARIO MENDOZA, JR.,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | CIVIL ACTION NO. 7:23-cv-00291 |
| **MVM, INC., KG&P STRATEGIES, INC.,** | § § § | |
| **Defendants.** | § § | |

**DECLARATION OF OFELIA VIESCA**

1. My name is Ofelia Viesca. I am over the age of eighteen, of sound mind, and have personal knowledge of all the facts set forth in this declaration. All statements contained in this declaration are true and correct and are based upon my personal knowledge and/or my review of company records.

2. I am currently employed by MVM, Inc. ("MVM") as the Human Resources Business Partner. I have held this position since approximately March 27, 2022.

3. MVM provides diversified security services to private and public entities. MVM specializes in providing services to Federal agencies throughout the U.S. Departments of Defense, Justice, Homeland Security, Health and Human Services, and State, as well as the Social Security Administration.

4. I know the plaintiff Mario Mendoza, Jr. from my interactions with him at work. MVM employed Mr. Mendoza for almost five years as a Transportation Specialist. KG&P Strategies, Inc. did not employ Mr. Mendoza.

5. MVM maintained numerous employment-related policies and procedures during Mr. Mendoza's employment, including an Employee Handbook and Standard Operating

1

Procedures ("SOP"). MVM employees re-acknowledge annually MVM's SOPs and periodically undergo refresher trainings on the SOPs. On November 2, 2019, Mr. Mendoza signed an acknowledgment that he read and understood the Written Standards of Conduct SOP. A true and correct copy of the SOP acknowledgment is attached as Exhibit 7 to MVM's Motion for Summary Judgment. The Written Standards of Conduct SOP was periodically updated but remained in effect throughout Mr. Mendoza's employment. On March 3, 2022, Mr. Mendoza underwent a refresher training and signed an acknowledgment that he read and understood MVM's SOPs. A true and correct copy of the training acknowledgment is attached as Exhibit 3 to MVM's Motion for Summary Judgment. Employees, including Mr. Mendoza, reviewed the April 2021 SOPs during the March 3, 2022 refresher training.

6.     MVM's Employee Handbook provides for the possibility of progressive discipline, but it does not guarantee any employee progressive discipline prior to termination. A true and correct copy of the employee handbook is attached as Exhibit 9 to MVM's Motion for Summary Judgment.

7.     On June 6, 2022, Elba Navarro (Site Manager) forwarded me an email that she and Jose Guerra (Site Supervisor) had received from Elizabeth Cardenas on June 5, 2022. A true and correct copy of our email exchange is attached as Exhibit 27 to MVM's Motion for Summary Judgment. In her email, Ms. Cardenas complained about Mr. Mendoza. Specifically, Ms. Cardenas complained that during her June 4, 2022, work assignment with Mr. Mendoza, where they were transporting three unaccompanied noncitizen female children from Texas to Maryland, Mr. Mendoza was not helpful despite being the team lead, and that he had fallen asleep while on duty on both flights. Ms. Cardenas attached photographs to her email of Mr. Mendoza wearing earphones and sleeping while seated next to one of the female minors he was accompanying.

8. In order to investigate this issue, I interviewed Ms. Cardenas on June 6, 2022. True and correct copies of my contemporaneous interview notes are attached as Exhibit 29 to MVM's Motion for Summary Judgment. During our discussion, Ms. Cardenas told me that Mr. Mendoza was asleep for nearly the entirety of the two flights and that she had to wake him up upon landing in Washington, D.C.

9. The next day, on June 7, 2022, Ms. Navarro informed me of a second complaint about Mr. Mendoza. An Immigration and Customs Enforcement ("ICE") Agent reported to the Logistics Field Supervisor, Juan Garcia, that he had observed Mr. Mendoza failing to assist his teammates even though he was the team lead during a deportation flight on June 1, 2022. A true and correct copy of our email exchange is attached as Exhibit 27 to MVM's Motion for Summary Judgment.

10. On June 7, 2022, I interviewed Mr. Mendoza about Ms. Cardenas's complaint about the trip on June 4th and the ICE Agent's complaint about the trip on June 1st. True and correct copies of my interview notes are attached as Exhibit 30 to MVM's Motion for Summary Judgment. Mr. Mendoza initially denied he was sleeping on the June 4th flights, saying only that he closed his eyes. When I questioned whether he was wearing earphones in violation of Company policy, however, he admitted using them. I asked him whether he had ever sought or obtained approval to use earphones since this is a violation of our policy, but he refused to answer. Mr. Mendoza confirmed that he was familiar with MVM's SOPs, including the requirement that he always maintain line of sight and sound to the unaccompanied minors. At the end of the interview, I told Mr. Mendoza that he could submit a written response regarding these incidents. Mr. Mendoza did not complain about alleged sex discrimination or retaliation during my interview.

11.     Later that day Mr. Mendoza submitted a written response. A true and accurate copy of his email response is attached as Exhibit 13 to MVM's Motion for Summary Judgment. Mr. Mendoza denied the ICE Agent's allegations. And, in response to the allegation that he was sleeping on duty, Mr. Mendoza admitted he could have done a better job in regard to closing his eyes, especially since a lot of others were fired for sleeping. I did not find Mr. Mendoza's denials about these accusations persuasive in the least. To begin with, Mr. Mendoza gave me no reason to believe that either the ICE Agent or Ms. Cardenas were lying about his behavior. In fact, instead of giving me reason to doubt Ms. Cardenas's complaint, Mr. Mendoza instead said that Ms. Cardenas was not being a team player because she should have gone to him instead of complaining to management or HR about his conduct. Not only is he wrong – Ms. Cardenas did the right thing by informing management about his misconduct, but it was certainly no excuse for his behavior, and these comments only made me more convinced that he had been sleeping on duty.

12.     After completing my investigation, I spoke with Ms. Navarro and Joseph Arabit (Program Manager) about what disciplinary action to take against Mr. Mendoza. Based on our review of the complaints from Ms. Cardenas and the ICE Agent, Mr. Mendoza's interview with me, and Mr. Mendoza's written response to the accusations, we determined that Mr. Mendoza had engaged in misconduct during the incidents on June 1 and June 4, 2022, by sleeping on duty, being inattentive, using earphones while on duty, and failing to perform duties as prescribed. We gave some consideration to the lesser punishment of a written warning, but because of the overwhelming proof that Mr. Mendoza had been sleeping on duty and using earphones, thus failing to maintain line of sight and sound while accompanying minors in his charge, we decided that employment termination was appropriate.

13. On June 10, 2022, Ms. Navarro and I spoke with Mr. Mendoza about his termination of employment. A true and correct copy of my call notes is attached as Exhibit 32 to MVM's Motion for Summary Judgment. I informed Mr. Mendoza that his employment was being terminated for failing to maintain line of sight and sound by sleeping on duty, being in an inattentive position, and failing to perform his duties. During that call, Mr. Mendoza did not complain about alleged sex discrimination or retaliation.

14. I understand that Mr. Mendoza is claiming that MVM terminated his employment because of his sex since another Transportation Specialist, Nancy Whitmire, was not terminated even though she was sleeping on duty. This is simply not true. The two situations were very different. On or about March 1, 2022, Ms. Whitmire was assigned to a family units' trip to Guatemala with 130 adults and children, 6 Transport Specialists, 2 ICE agents, and 2 nurses. Ms. Whitmire was not assigned custody of any particular individuals during this trip. After the flight, MVM received a complaint that Ms. Whitmire was sleeping while on duty. MVM investigated the complaint and determined that Ms. Whitmire slept during the flight for approximately 20 to 25 minutes. During MVM's investigation, it was uncovered that Ms. Whitmire had a pending internal complaint of retaliation against the Company, which she alleged related to certain union-organizing activities. Our investigation also revealed that Ms. Whitmire had no other misconduct complaints made against her. In light of these circumstances, Ms. Whitmire was issued a Final Written Warning and removed from the project she was on.

15. The situation with Mr. Mendoza was different from the situation with Ms. Whitmire. First, Ms. Whitmire was not assigned custody of any particular individuals during her assignment, but Mr. Mendoza most definitely was assigned custody of unaccompanied

noncitizen female children. In fact, as you can see in one of the photographs that Ms. Cardenas provided, one of the female children whom Mr. Mendoza was supposed to be accompanying was seated next to an unknown adult male on the flight while Mr. Mendoza was sleeping, potentially placing that child in danger. Second, not only did Mr. Mendoza admit he closed his eyes during the flights on June 4, 2022, but he also admitted to wearing earphones during the flight in violation of MVM's SOPs. Third, Mr. Mendoza had two separate complaints lodged against him by two different people for the first week of June 2022, as mentioned above. Finally, Ms. Whitmire had previously submitted an internal complaint about retaliation against her, which investigation was still pending when the decision was being made about what discipline to take against her for sleeping on duty, so this strongly mitigated against moving to terminate her employment. By contrast, Mr. Mendoza had never submitted any internal complaint of retaliation to MVM when we were deciding what discipline to issue him for his misconduct, which as I described above, was quite different from the situation with Ms. Whitmire.

16. Mr. Mendoza's allegation that we made the decision to terminate his employment because of his sex is particularly misdirected because MVM has terminated numerous other employees for sleeping on duty. In fact, the Company has previously terminated the employment of eight other Transportation Specialists since December 2021, three of whom are female, for sleeping on duty. In short, the employee's sex has nothing to do with these termination decisions.

17. Nevertheless, I understand that Mr. Mendoza claims that he was discriminated against and terminated because of his sex. None of the actions I took had anything to do with his sex. At no point during any conversation did Mr. Mendoza ever tell me that he felt he was being discriminated against or retaliated against by anyone at MVM. In fact, Mr. Mendoza never once raised the issue of anyone's sex to me, and he never once told me that he had ever complained

about discrimination to anyone else. The first time that I learned Mr. Mendoza was accusing anyone at MVM of discriminating or retaliating against him was when he filed his EEOC Charge on or about November 15, 2022.

18. In my position, I also serve as one of MVM's custodian of records. Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 24, 25, and 26 attached to MVM's Motion for Summary Judgment, are true and correct copies of records made at or near the time by, or from information transmitted by, a person with personal knowledge of their contents; these records are kept in the course of regularly conducted business activity; and it was the regular practice of MVM to make and maintain these records.

I declare under penalty of perjury that the foregoing is true and correct.

Executed April 11, 2024.

_____
Ofelia Viesca